UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

KUMAR JONES,

                         Petitioner,

        -vs-                              **No. 6:13-CV-6260(MAT)**
                                          **DECISION AND ORDER**
M. BRADT, Attica Correctional
Facility Superintendent,

                         Respondent.

───────────────────────────────

## I.    Introduction

        Proceeding <u>pro se</u>, Kumar Jones ("Petitioner") filed a petition

for a writ of habeas corpus pursuant to 28 U.S.C. 2254, alleging

that he is being held in Respondent's custody in violation of his

federal constitutional rights. Petitioner is incarcerated pursuant

to a judgment entered on March 11, 2009, in Ontario County Court

(Reed, J.) of New York State Supreme Court, following a jury

verdict convicting him of two counts of Assault in the First Degree

(N.Y. Penal Law ("P.L.") § 120.10(1)).

## II.  Factual Background and Procedural History

        The convictions here at issue stem from an incident in which

Petitioner injected himself into a fist-fight between two groups of

individuals and stabbed two of them, causing them serious injuries.

Afterwards, Petitioner fled the area and eventually was arrested in

Brooklyn. On his return to Ontario County, he was indicted on

December 17, 2008, on two counts of first-degree assault. After

discovery but prior to trial, the prosecutor extended an offer to Petitioner to plead guilty to the indictment with a sentence-promise of 6 years in state prison plus 5 years of post-release supervision. Petitioner rejected the plea offer.

Petitioner's jury trial commenced on March 9, 2009. The prosecution's proof revealed that the stabbings occurred on May 27, 2008, shortly before midnight, on Hallenbeck Avenue in the City of Geneva. Jeremiah Allen ("Allen") was at a party at his cousin's house when one of the other guests received a telephone call that "people were just talking junk." In response, Allen left the party and went to the courtyard at Chartres Homes, where he saw Petitioner and his godson, Terrell Crittleton ("Crittleton"). After words were exchanged back and forth between various individuals, Allen returned to his cousin's house.

Later on, when Allen later went to take out the trash, he encountered Crittleton and some other people outside his cousin's house. According to eyewitness Kyejuan Smallwood ("Smallwood"), Allen called Crittleton a "bitch." T.151. Crittleton then took two swings at Allen, and Allen struck Crittleton in the face with his open hand. As Crittleton continued to swing at him, Allen pushed Crittleton and struck him in the face, and Crittleton fell to the ground. Meanwhile various individuals, from two different cliques, started to fight. Petitioner approached Allen and stabbed him in the chest with a butterfly knife he had secreted in his clothing.

When Allen raised his arm to ward off another blow, Petitioner stabbed him in the left wrist. Confused, Allen backed away from Petitioner.

After seeing his cousin, Allen, get stabbed, John Archibald ("Archibald") ran at Petitioner, punched him in the face, and grabbed Petitioner's arm in an attempt to wrestle the knife away from him. Petitioner then stabbed Archibald twice in the back. Petitioner then was seen discarding the knife and fleeing on foot.

An acquaintance of Allen's named Terrez drove Allen and Archibald to the hospital, where Allen's condition became critical, requiring resuscitation and thoracic surgery. Archibald's injuries were serious but not life-threatening. Both young men remained in the hospital for more than a week.

At trial, Petitioner took the stand and testified that he and Crittleton, whom he described as his son, were engulfed by a mob at the Chartres Homes courtyard. Petitioner and Crittleton were dragged to the ground and bombarded with blows. At some point, an unidentified individual intervened on their behalf and engaged in a knife fight with Petitioner's aggressors, allowing Petitioner and Crittleton to extricate themselves. Petitioner then grabbed Crittleton and returned home. Later that evening, Petitioner was visited by the man who had helped him during the fight. Petitioner testified that this man directed Petitioner not to reveal his identity. Petitioner testified that the man's name was "D'Real".

-3-

Petitioner explained that after the incident, he went to New York City, leaving his family behind in Geneva.

The jury returned a verdict convicting Petitioner on both counts of the indictment. On March 11, 2009, he was sentenced to determinate 10-year terms on each conviction, to be served consecutively, plus 5 years of post-release supervision.

Represented by new counsel, Petitioner appealed to the Appellate Division, Fourth Department, of New York State Supreme Court. Petitioner also filed a pro se supplemental brief. On December 30, 2010, Petitioner's conviction was unanimously affirmed. People v. Jones, 79 A.D.3d 1773 (4th Dep't 2010), lv. denied, 16 N.Y.3d 832 (2011). Petitioner filed 4 collateral motions to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") 440.10 in Ontario County Court ("the 440 Court"). The 440 Court denied all of the motions, and the Appellate Division denied each of Petitioner's leave applications. Petitioner also filed 2 applications for writs of error coram nobis, which were denied by the Appellate Division. The New York Court of Appeals denied each of his leave applications.

This timely habeas petition followed. Respondent answered the petition and filed a memorandum of law in opposition, asserting that Petitioner's claims, for the most part, were unexhausted and procedurally defaulted. Petitioner filed a reply. For the reasons set forth below, the request for a writ of habeas corpus is denied,

and the petition is dismissed.

## III. Discussion

### A. Defective Grand Jury Proceeding (Ground One)

Petitioner asserts entitlement to relief on the basis that the grand jurors were "mislead [sic] [by the prosecutor] to think [Petitioner's] identification was confirmatory." Petition ("Pet."), Ground One, ¶ 22(A), p. 12 of 17. However, it is well settled that claims of deficiencies in state grand jury proceedings are not cognizable on federal habeas review. See Lopez v. Riley, 865 F.2d at 32-33 (2d Cir. 1989) (relying on United States v. Mechanik, 475 U.S. 66, 70 (1986)). Here, a petit jury convicted Petitioner on all charges in the indictment. Thus, any error in the prosecutor's presentation of the case to the grand jury was rendered harmless by the petit jury's verdict, which found Petitioner's guilt beyond a reasonable doubt. See, e.g., Medina v. Herbert, 98 CIV. 1871(RWS), 1998 WL 799173, at *4 (S.D.N.Y. Nov. 16, 1998) (habeas claims that prosecutor presented deliberately incomplete, misleading, confusing case to grand jury not cognizable in light of guilty verdict reached by petit jury after trial).

### B. Suggestive Pre-Trial and In-Court Identifications (Ground Two)

Petitioner asserts that the courtroom identifications made by Allen, Archibald, and Smallwood were unduly suggestive because (a) Allen and Archibald were on gurneys next to each other when Officer Steve was questioning them, and they had the opportunity to

overhear each others' recollections; and (b) at trial, the prosecutor allegedly pointed to Petitioner, the only black male in the courtroom, and asked the witnesses if they knew him. See Pet., ¶ 22(B), p. 13 of 17. Respondent argues that these claims are unexhausted because Petitioner failed to raise them on direct appeal, and must be deemed exhausted and procedurally defaulted because Petitioner faces an absence of corrective process in state court. Petitioner suggests that he exhausted his suggestive identification claim by raising it as a predicate for trial counsel's ineffectiveness in his second C.P.L. § 440.10 motion (Resp't Ex. Q), wherein he asserted that his "conviction was obtained in violation of his (14th) Fourteenth Constitutional Amendment [right], by the introduction of the in-court identification . . . without there being a C.P.L. § 710.30[1] notice." Petitioner's Notice of Motion, ¶ 1 (Resp't Ex. Q). Petitioner did not present any argument about the circumstances of the courtroom identification, or about Officer Steve's interviews of the victims at the hospital. Instead, he simply attached various pages of the trial transcript containing the witnesses' identification testimony.

Even assuming arguendo that Petitioner's bare reference to the

---

[1]

C.P.L. § 710.30 is a "notice statute intended to facilitate a defendant's opportunity to challenge before trial, inter alia, the reliability of his identification by others. People v. Lopez, 84 N.Y.2d 425, 428 (1994) (citations omitted). Thus, whenever the prosecution intends to offer or testimony of observations of a defendant, it must serve notice of such evidence within 15 days of arraignment and before trial. Id.

14th Amendment sufficiently "call[ed] to mind" a due process violation, Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 124 (2d Cir. 1995), his attachment of the transcript pages without explaining how and why they supported his suggestive identification claim did not adequately put the 440 Court on notice of the substance of the claim raised in the instant habeas petition, which is that the courtroom identifications violated Due Process because they were made under circumstances that created a substantial likelihood of irreparable misidentification and were irreparably tainted by the earlier, joint interviews of the victims by Officer Steve. Here, the claim raised by Petitioner before the 440 Court regarding the identification testimony was not the "substantial equivalent," Picard v. Connor, 404 U.S. 270, 278 (1971), of the claims he now raises in his federal petition. Therefore, the habeas claims cannot be said to have been "fairly presented". See Strogov v. Attorney Gen'l of State of N.Y., 191 F.3d 188, 191 (2d Cir. 1999) ("A federal constitutional claim has not been fairly presented to the State courts unless the petitioner has informed those courts of 'all of the essential factual allegations' and 'essentially the same legal doctrine he asserts in his federal petition.'") (quotation and citation omitted). Because these claims based on the witnesses' identification of him as the assailant were not fairly presented in federal constitutional terms to the state courts, they are unexhausted.

-7-

"When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio v. Artus, 269 F.3d 78, 90 (2d Cir. 2001) (quotation omitted). That is the case here. Petitioner already has used the one direct appeal to which was entitled. See, e.g., Cunningham v. Conway, 717 F. Supp.2d 339, 365 (W.D.N.Y. 2010) (citing N.Y. R. CT. §§ 500.20(a)(2), (d); N.Y. CRIM. PROC. LAW § 460.10(5); collecting cases). Collateral review in a motion to vacate pursuant to C.P.L. § 440.10(2)(c) is also barred because "sufficient facts appear on the record of the proceedings underlying the judgment" to have permitted him to raise the claims on direct appeal. See N.Y. CRIM. PROC. LAW § 440.10(2)(c) (mandating denial if sufficient facts appeared on the record to have permitted direct review but defendant unjustifiably failed to raise claim on direct appeal). Although Petitioner's claims are "deemed exhausted" due to the absence of "remedies available" in the state courts, they also are procedurally defaulted as a result of these procedural bar rules. See Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991). In order to overcome the procedural default, Petitioner would have to show cause for the default, and prejudice attributable thereto, or that a fundamental miscarriage of justice

would occur if this Court were to decline to review the claim. <u>See</u> <u>id.</u> (citations omitted).

Petitioner suggests that trial counsel's ineffectiveness in failing to move to preclude the identification testimony is "cause" for the procedural default. "[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" as cause for a procedural default. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000) (citation omitted). However, "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim[,]" which must be exhausted and not itself subject to a procedural default. <u>See</u> <u>id.</u> at 451-52. Here, as explained below, the ineffective assistance claim Petitioner seeks to use as "cause" is procedurally defaulted. In his second C.P.L. § 440.10 motion, Petitioner asserted that trial counsel was ineffective for failing to raise several arguments in support of preclusion of these witnesses' in-court identification testimony, including that it was unduly suggestive. The 440 Court denied this claim by invoking two state procedural rules, C.P.L. §§ 440.10(2)(c) and 440.10(3)(c). <u>See</u> Second C.P.L. § 440.10 Order at 1-2 (Resp't Ex. R).

The Court finds that C.P.L. § 440.10(2)(c) was an adequate and independent state ground for the 440 Court's decision. The "independent" prong is satisfied since the 440 Court "clearly and

expressly state[d] that its judgment rest[ed] on a state procedural bar[,]" Harris v. Reed, 489 U.S. 255, 263 (1989), and did not consider the mertis. The "adequacy" requirement is met because C.P.L. § 440.10(2)(c) is "firmly established and regularly followed," Lee v. Kemna, 534 U.S. 362, 376 (2002) (quotation omitted), by New York courts in circumstances similar to those here. It is well-settled that "where the record is sufficient to allow appellate review of a claim, the failure to raise that claim on appeal precludes subsequent collateral review of the claim." Alston v. Donnelly, 461 F. Supp.2d 112, 123 (W.D.N.Y. 2006) (collecting cases). Although sometimes ineffective assistance claims are based on matters dehors the record and properly raised in a collateral motion rather than on direct appeal, this is not one of those claims. See Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003) (citation omitted). Here, trial counsel's ineffectiveness is premised on his failure to move to preclude certain testimony, and thus his error (i.e, the lack of objection) was reflected within the record, making it an appropriate claim to raise on direct appeal, especially given that Petitioner had new appellate counsel. See id.

The 440 Court's reliance on C.P.L. § 440.10(2)(c) creates a procedural bar as to the ineffective assistance claim sought to be used as "cause" for the underlying identification claims. Because the ineffective assistance of trial counsel claim, too, is

procedurally defaulted, it cannot serve as "cause" to excuse the procedural default of Petitioner's suggestive identification claim. Because Petitioner cannot demonstrate "cause", the Court need not determine whether he can establish prejudice. Furthermore, there has been no showing of a fundamental miscarriage of justice. The suggestive identification claim therefore is dismissed as procedurally defaulted.

### C. Perjury by Eyewitnesses (Ground Three)

Petitioner asserts that Smallwood, Archibald, and Allen testified inconsistently with their prior statements to police and thereby perjured themselves. Petitioner also asserts that the prosecutor improperly failed to correct this false testimony. Petitioner raised this claim in his pro se brief on direct appeal, and the Appellate Division rejected it as unpreserved for review. Jones, 79 A.D.3d at 1774 (citing N.Y. CRIM. PROC. LAW § 470.05(2); other citation omitted). However, Petitioner reasserted it in connection with his first C.P.L. § 440.10 motion, and the 440 Court considered the claim on the merits, notwithstanding the lack of preservation. The 440 Court found that

> [a] review of the record does not reveal the major inconsistencies claimed by the Defendant so as to undermine the witnesses' testimony. There is no basis for the claim that the witnesses perjured themselves at trial or that the People failed to disclose any inconsistent statements. . . .

C.P.L. § 440.10 Order dated 3/29/11, p. 2 (Resp't Ex. N). Respondent argues that the claim is procedurally defaulted due to

the Appellate Division's reliance on an adequate and independent state ground, C.P.L. § 470.05(2). This argument ignores the fact that a subsequent court considered the claim on the merits. In <u>Ylst v. Nunnemaker</u>, 501 U.S. 797 (1991), the Supreme Court explained that "[s]tate procedural bars are not immortal" and "may expire because of later actions by state courts." <u>Id.</u> at 801. If, as was the case here, "the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." <u>Id.</u> (citing <u>Harris</u>, 489 U.S. at 262). Accordingly, the Court rejects Respondent's procedural default argument and will examine the claim on the merits.

As an initial matter, the Court notes that the 440 Court incorrectly stated in its order that "[t]he jury note, marked as Court Exhibit 2 and annexed to the Defendant's motion papers as Exhibit F, clearly indicates that the jury requested and considered the depositions of witnesses Archibald, Allen and Smallwood." C.P.L. § 440.10 Order dated 3/29/11, p. 2 (Resp't Ex. N). Although the depositions were marked, they were not admitted into evidence, and for that reason the trial judge declined to allow the jury to review them. This error by the trial court is of no moment to this Court's analysis, because the issue of whether the prosecution's witnesses perjured themselves does not depend on whether the jurors saw the witnesses' pre-trial statements.

Petitioner's claim that his conviction was based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth Amendment. <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959). In <u>Napue</u>, the Supreme Court held that a conviction must be set aside if "(1)'the prosecution knew, or should have known, of the perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" <u>Drake v. Portuondo</u>, 321 F.3d 338, 345 (2d Cir. 2003) (quoting <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976); footnote in <u>Drake</u> omitted)). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." <u>United States v. Monteleone</u>, 257 F.3d 210, 219 (2d Cir. 2001) (citation omitted). The Second Circuit has noted that "even a direct conflict in testimony does not in itself constitute perjury." <u>United States v. Gambino</u>, 59 F.3d 353, 365 (2d Cir. 1995), <u>cert. denied</u>, 517 U.S. 1187 (1996).

A perjury claim cannot succeed unless a defendant establishes that the witnesses, in fact, perjured themselves. Petitioner here has relied solely on the record and has not submitted any affidavits or other supporting evidence to show that Smallwood, Archibald, and Allen actually offered false testimony at his trial. The 440 Court found that Petitioner had failed to prove that the

witnesses' testimony was false, that is, no perjury had occurred. This factual determination is afforded a presumption of correctness under 28 U.S.C. § 2254(e)(1) which Petitioner bears the burden of rebutting by clear and convincing evidence. E.g., Ellis v. McGinnis, No. 00-CV-3246(FB), 2001 WL 726983, at *5 (E.D.N.Y. June 28, 2001). Comparing the testimony provided by Smallwood, Archibald, and Allen with their pre-trial statements to police simply fails to establish that they "knowingly and willingly" testified falsely. At most, Petitioner has shown that the witnesses were inarticulate in their testimony and sometimes inconsistent in their recollections. However, "[s]imple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." Monteleone, 257 F.3d at 219; see also United States v. Sanchez, 969 F.2d 1409, 1415 (2d Cir. 1992) ("Differences in recollection alone do not add up to perjury. Under the circumstances of this case, the differences in testimony presented a credibility question for the jury, at most.") (internal citations omitted)). Morever, any inconsistencies in the testimony offered by Allen, Archibald and Smallwood vis-à-vis their prior statements did not relate to matters material to Petitioner's guilt or innocence. Therefore, the Court can find no reasonable likelihood that the complained-of inconsistencies could have affected the judgment of the jury. As Petitioner has failed to establish multiple elements of a viable perjury claim, habeas relief is not warranted on Ground Three of

the Petition.

**D.  Ineffective Assistance of Trial Counsel (Grounds  Four, Five, and Eleven)**

**1.  Ground Four**

Petitioner faults counsel for failing to impeach Archibald, Allen, and Smallwood with their allegedly inconsistent prior statements. Petitioner raised this claim in his third C.P.L. § 440.10 motion, and the 440 Court denied it pursuant to C.P.L. §§ 440.10(2)(c) and 440.10(3)(c). Given that the 440 Court did not reach the merits, C.P.L. § 440.10(2)(c) was "independent" of the judgment. C.P.L § 440.10(2)(c) also was "adequate" to support the judgment. The ineffectiveness claim alleged in Ground Four is based on trial counsel's performance in regards to cross-examining witnesses. As it is "particularly well-established in the trial record," Sweet, 353 F.3d at 140, it is the type of ineffective assistance claim that could have been raised on direct appeal. The 440 Court's reliance on C.P.L. § 440.10(2)(c) as an adequate and independent state ground has resulted in a procedural default of Ground Four. Petitioner has not established cause, and prejudice is lacking since, as discussed above, any inconsistencies in the witnesses' trial testimony as compared to their pre-trial statements were not material. Thus, trial counsel's failure to more aggressively cross-examine the witnesses did not prejudice the defense.

**2.  Ground Five**

Petitioner asserts that counsel failed to move to exclude the "suggestive identification procedure where [Petitioner] was the only black male in the court room and sitting at defense table . . . and after A.D.A. pointed to [him] asking witness to point [him] out, with trial being first and only confrontation." Pet., ¶ 22(E), p. 14 of 17. The Court already has disposed of Ground Five in its discussion of that claim as "cause" to excuse Petitioner's procedural default of his suggestive identification claims. See Section III.B, supra. As explained, the claim is procedurally defaulted due to the 440 Court's reliance on adequate and independent state grounds to dismiss it. As with the rest of Petitioner's procedurally defaulted claims, there has been no showing of cause and prejudice, or that a fundamental miscarriage of justice will occur in the absence of habeas review of the claim. Ground Five is dismissed as subject to an unexcused procedural default.

### 3. Ground Eleven

Ground Eleven contains three allegations of ineffectiveness. See Pet., ¶ 22(K), p. 15 of 17. First, Petitioner alleges that trial counsel erred in failing to object to "Brady/Rosario violations". As discussed infra, Petitioner does not have a meritorious argument based on Brady v. Maryland, 373 U.S. 83 (1963). Trial counsel was not professionally unreasonable to press a meritless claim, and Petitioner was not prejudiced by counsel's

omission, because the objection had no chance of success. <u>See</u> <u>Flores v. Demski</u>, 215 F.3d 293, 304 (2d Cir. 2000) ("Prejudice is established if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (quotations omitted).

Second, Petitioner asserts that counsel failed to object to prosecutorial misconduct. This claim was not raised in state court and is unexhausted. However, it must be deemed exhausted but procedurally defaulted because Petitioner now faces an absence of corrective process in state court. As discussed above, he has used the one direct appeal to which he is entitled. Were he to raise the claim in a collateral motion to vacate, it would be denied pursuant to C.P.L. § 440.10(2)(c). Because the claim is premised on counsel's failure to object to the prosecutor's questioning of witnesses and his remarks on summation, the alleged errors are contained within the trial record. The claim therefore could have been raised on direct appeal. Although trial counsel is not expected to argue his own ineffectiveness, Petitioner had new counsel representing him on direct appeal. "There is no justifiable reason, then, why [Petitioner] could not have raised his ineffective assistance of counsel claims on direct review, especially since he had different counsel representing him." <u>Hogan</u> <u>v. West</u>, 448 F. Supp.2d 496, 507 (W.D.N.Y. 2006) (citation omitted). The procedural bars that result in the construction

exhaustion of this claim also create a procedural default. As discussed above, cause and prejudice has not been shown. Nor has Petitioner shown that a fundamental miscarriage of justice will occur if the Court declines to consider this subclaim of Ground Eleven, which is dismissed as procedurally defaulted.

Third, Petitioner faults counsel for failing to object to alleged perjury by Archibald, Allen, and Smallwood. The Court already has found that Petitioner's perjury claim lacks merit. Trial counsel did not perform unreasonably in declining to make a meritless objection. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance of counsel.") (citations omitted). Any omissions by trial counsel in this regard did not result in prejudice to the defense since, as discussed above, Petitioner has not established that the witnesses actually perjured themselves. See Minigan v. Donnelly, No. 01-CV-0026A(VEB), 2007 WL 542137, at *24 (W.D.N.Y. Feb. 16, 2007) ("Prejudice, in particular, is lacking here, since Minigan has not even demonstrated the witnesses in question perjured themselves."). Accordingly, this ineffective assistance claim cannot provide a basis for habeas relief.

### E.   Violation of the Rosario Rule (Ground Six)

Petitioner claims that the prosecutor committed a violation of the rule articulated in People v. Rosario, 9 N.Y.2d 286 (1961), and

codified at C.P.L. § 240.45(1)(a).[2] The <u>Rosario</u> rule "requires a prosecutor to supply defense counsel with all of the nonconfidential pretrial statements, recorded or written, of a prosecution witness that relate to the subject matter of his trial testimony." <u>People v. Giordano</u>, 274 A.D.2d 748, 749 (3d Dep't 2000). According to Petitioner, the prosecutor should have disclosed that the police recovered a quantity of marijuana when they executed a search warrant at Petitioner's house. The Court notes that the police officer did not testify during his direct examination that he found marijuana during the search of Petitioner's home. Nonetheless, even if Petitioner had identified witness statements within the ambit of the <u>Rosario</u> rule, it is well settled that "the failure to turn over <u>Rosario</u> material is not a basis for habeas relief as the <u>Rosario</u> rule is purely one of a state law." <u>Green v. Artuz</u>, 990 F. Supp. 267, 274 (S.D.N.Y. 1998) (citations and footnote omitted); <u>see</u> <u>also</u> <u>Landy v. Costello</u>, No. 97-2433, 141 F.3d 1151, 1998 WL 105768, at *1 (2d Cir. Mar. 9, 1998) (stating that "the obligation to turn over <u>Rosario</u> material arises under <u>state</u> law") (emphasis in original). Consequently, it cannot provide the basis for habeas relief. <u>See</u> <u>id.</u>; <u>see</u> <u>generally</u> 28 U.S.C. § 2254(a).

---

2

    C.P.L. § 240.45 provides in relevant part that "the prosecutor shall . . . make available to the defendant: (a) Any written or recorded statement . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony[.]" N.Y. CRIM. PROC. LAW § 240.45(1)(a).

**E.   Violation of Prosecution's Due Process Disclosure Obligations (Ground Six)**

Petitioner asserts that the prosecutor violated his due process rights under Brady v. Maryland, supra, by failing to disclose, during discovery or at the pre-trial Sandoval hearing, that the police found marijuana when they executed a search warrant at Petitioner's home. When Petitioner asserted this claim in his third C.P.L. § 440.10 motion, the 440 Court denied it pursuant to C.P.L. §§ 440.10(2)(c) and 440.10(3)(c) without reaching the merits. Respondent argues that the Brady claim is procedurally defaulted due to the 440 Court's reliance upon two separate adequate and independent state grounds, C.P.L. §§ 440.10(2)(c) and 440.10(3)(c), each of which is sufficient, standing alone, to function as a procedural bar. The Court agrees. See, e.g., Ferguson v. Walker, No. 00Civ.1356(LTS)(AJP), 2002 WL 31246533, at *3 (S.D.N.Y. Oct. 7, 2002) (state court's reliance on C.P.L. § 440.10(2)(c) to dismiss Brady claim was adequate and independent state ground where sufficient facts appeared on the record to permit direct review of claim); see also Collins v. Superintendent Conway, 2006 WL 1114053, at *3 (S.D.N.Y. Apr. 26, 2006) (petitioner's record-based claims were procedurally barred they were dismissed on procedural grounds pursuant to C.P.L §§ 440.10(3)(a) and (c), which federal courts in this circuit have found to be adequate and independent grounds sufficient to foreclose habeas review) (collecting cases). Petitioner has failed

to make the required showing of cause and prejudice, and neither are apparent on the record before this Court. Likewise, Petitioner cannot demonstrate that a fundamental miscarriage of justice will occur if the Court does not consider his Brady claim. Indeed, the claim is patently without merit.

An actionable Brady violation has three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Petitioner has not explained, the Court is at a loss to understand, how the marijuana found in his home constituted exculpatory evidence or impeachment material for use in cross-examining the witnesses against him. As Petitioner cannot establish a key element of a Brady violation, this claim does not provide a basis for habeas relief.

**F.   Improper Bolstering (Ground Seven)**

Petitioner argues that Officer Steve's testimony concerning the victims' identifications of Petitioner during his interviews of them at the hospital constituted "bolstering" of those witnesses' identification testimony. Petitioner raised this claim in his fourth C.P.L. § 440.10 motion, and the 440 Court found that the claim was barred pursuant to C.P.L. § 440.10(3)(c) because he failed to offer any justification for not raising the issue in his

previous, as well as pursuant to C.P.L. § 440.10(2)(c) because the claim was record-based and should have been raised on appeal. Respondent argues that the claim is procedurally defaulted due to the 440 Court's reliance two separate adequate and independent state grounds to dismiss it. The Court agrees. This is a record-based claim, which could have been raised on direct appeal. The 440 Court's reliance on C.P.L. § 440.10(2)(c) was an adequate and independent state ground for dismissal and has resulted in a procedural default. See, e.g., Cummings v. Burge, No. 03-CV-6632(DGL)(VEB), 2008 WL 10665432, at *2 (W.D.N.Y. July 31, 2008) (habeas claim that witness permitted to bolster her own testimony was procedurally defaulted where it was denied on collateral review pursuant to C.P.L. § 440.10(2)(c) (citations omitted).

Petitioner has not shown cause for his default and actual prejudice attributable thereto, or that the failure to consider his claim will result in a fundamental miscarriage of justice. "Plainly, prejudice resulting from the procedural default of this claim is lacking because alleged 'bolstering' of a prosecution witness' testimony does not state a constitutional claim redressable on federal habeas." Minigan v. Donnelly, 2007 WL 542137, at *12 (collecting cases). This claim is dismissed as procedurally defaulted and as non-cognizable.

### G. Erroneous Admission of Testimony Regarding an Uncharged Crime (Ground Six)

As part of Ground Six, denominated as the "Brady and/or Rosario" claims, Petitioner alleges that the prosecutor improperly questioned him about marijuana found at his house during the execution of a search warrant, and then argued during summation that the jury could consider Petitioner's possession of marijuana in assessing his credibility. Before jury selection, the trial court held a Sandoval hearing to determine the extent to which Petitioner could be cross-examined regarding his prior crimes and bad acts. At the hearing, no one mentioned that the police had recovered marijuana at Petitioner's house when they executed a search warrant. Therefore, the trial court did not have occasion to consider whether the prosecution could question Petitioner about his possession of marijuana, which would constitute an uncharged crime.

At trial, Detective Bendzlowicz testified that he executed a search warrant at Petitioner's home but found no knife or bloody clothes. T.206. Detective Bendzlowicz was not asked if he recovered marijuana during the search, and he did not offer such testimony. However, during the defense case, the prosecutor asked Petitioner whether the marijuana that the police found at his house belonged to his godson, Crittleton. This was improper as the prosecutor had not requested a ruling during the Sandoval hearing about whether this uncharged crimes evidence could be a topic of cross-examination should Petitioner testify. However, trial counsel did

not object. Petitioner responded, "That was mine." T.308.  Again, trial counsel did not object. During summation, the prosecutor argued that the jury could consider Petitioner's possession of marijuana in connection with assessing his credibility. T.351-52. Once again, trial counsel did not lodge an objection.

There is some doubt as to whether Petitioner properly exhausted this claim by fairly apprising the state courts of the factual and legal bases of the claim. He simply mentioned this claim in his fourth C.P.L. § 440.10 motion under the point heading regarding his argument that the prosecution failed to disclose that marijuana was found in Petitioner's home "pursuant to Brady/Rosario". Petitioner's Affidavit, ¶ 5(C) (Resp't Ex Y). The claim that Petitioner asserted in that motion thus was not substantially equivalent to the claim presented here, namely, that the prosecutor improperly elicited, and the trial court failed to strike from the record, prejudicial evidence of uncharged crimes. Furthermore, as Respondent notes, Petitioner did not present such a claim in federal constitutional terms. The claim appears to be unexhausted.

However, Petitioner now lacks any avenue by which to raise the claim. As noted above, he has used the one direct appeal to which he was entitled, and if the claim were raised in a motion for vacatur, it would be subject to mandatory dismissal under C.P.L. § 440.10(2)(c). Although the claim must be deemed exhausted, it

also is procedurally defaulted. There is no basis for excusing the procedural default, as discussed above.

Even assuming Petitioner fairly presented the uncharged crimes claim in his fourth C.P.L. § 440.10 motion simply by referring to a Brady/Rosario violation, the result again is a finding of unexcused procedural default. This is because the 440 Court denied the Brady/Rosario claim on adequate and independent state grounds, namely, C.P.L. § 440.10(2)(c), because it was a record-based claim that unjustifiably was not raised on direct appeal, and C.P.L. § 440.10(3)(c), because Petitioner failed to raise it in a previous motion to vacate.

## H.   Prosecutorial Misconduct (Grounds Eight, Nine and Ten)

Petitioner contends that the prosecutor committed misconduct because he (1) elicited hearsay from, and failed to correct false testimony by, Officer Steve (Ground Eight); (2) commented in summation about matters not in evidence (Ground Nine); (3) cross-examined Petitioner regarding his "post-arrest silence" (Ground Ten); (4) commented in summation concerning Petitioner's "post-arrest silence" (Ground Ten); and (5) argued that Petitioner's presence in the courtroom during trial allowed him to tailor his testimony (Ground Ten).

### 1.   Ground Eight

Construing Ground Eight's allegations liberally, Petitioner appears to claim that Officer Steve testified falsely that

Archibald and Allen each identified Petitioner by name. T.190-91. Petitioner relies on an unsigned police report, which he submitted with his fourth C.P.L. § 440.10 motion. The report states that "Allen told this officer [Officer Steve] that his mother believes that Jesus[3] [i.e., Petitioner] stabbed him." Police Report, dated 3/31/08, attached as exhibit to Resp't Ex. Y. Petitioner argues that the police report proves the falsity of Officer Steve's perjury. That is to say, Allen did not tell Officer Steve that he personally knew the name of the person who stabbed him but instead only identified the perpetrator based on his mother's opinion of who it was. The 440 Court rejected this claim pursuant to C.P.L. §§ 440.10(2)(c) and 440.10(3)(c). Respondent argues that these claims are procedurally defaulted due to the 440 Court's reliance on adequate and independent state grounds, C.P.L. §§ 440.10(2)(c) and 440.10(3)(c), to dismiss it.

The independent prong is easily satisfied, as the 440 Court clearly and explicitly relied on C.P.L. §§ 440.10(2)(c) and 440.10(3)(c) to dismiss the claim. It is not entirely whether the police report was part of the record on appeal, and therefore there is a question as to C.P.L. § 440.10(2)(c)'s "adequacy" in this instance. However, the Court finds that C.P.L. § 440.10(3)(c) was a firmly established and regularly followed rule that has been

---

[3]    At trial, Archibald and Allen testified that they knew Petitioner by the nickname of "Jesus." T.93-94; 128-29. Petitioner confirmed that one of his nicknames is Jesus. T.286.

applied consistently to similar claims. See Rosario v. Bennett, No. 01 Civ. 7142(RMB)(AJ., 2002 WL 31852827, at *21 (S.D.N.Y. Dec. 20, 2002) (collecting cases). Notably, there is no suggestion that Petitioner could not have raised this perjury claim in one of his two previous C.P.L. § 440.10 motions. Indeed, Petitioner has never argued that the March 31, 2008 police report was newly discovered evidence that only came to light around the time of his third C.P.L. § 440.10 motion. Accordingly, C.P.L. § 440.10(3)(c) constitutes a procedural bar to habeas review of the perjury claim involving Officer Steve.

As is the case with the other procedurally defaulted claims in the Petition, Petitioner has failed to establish the requisite cause and prejudice. Indeed, prejudice clearly is lacking because the claim has no merit. As discussed above, mere inconsistencies or contradictions in a witness' testimony do not, standing alone, establish that the witness committed perjury. Even if Petitioner is correct that Allen actually told Officer Steve that his mother thought Jesus had stabbed him, there is no reasonable probability that the outcome of the trial would have been different had the jury heard that testimony. Both Archibald and Allen had known Petitioner prior to the altercation, and Archibald unequivocally told Officer Steve that "Kumar Jones" stabbed Allen and then stabbed him. Smallwood, the eyewitness, "kind of" knew "Jesus" prior to the incident, and identified him as the person who stabbed

Archibald and Allen. T.153-56.

Finally, Petitioner has not shown that a fundamental miscarriage of justice will occur if the Court does not review the allegations in Ground Eight. Accordingly, they are dismissed as subject to an excused procedural default.

### 2. Ground Nine

Petitioner contends that the prosecutor became an unsworn witness and exceeded the bounds of fair commentary during summation. The prosecutor suggested that Allen, Archibald, and Smallwood had given "the same consistent version [of events]" from "day one", i.e., that Petitioner had "wielde[d] . .. th[e] knife". T.354. The prosecutor also stated that these witnesses had "not been impeached or cross-examined with some different version of events they gave." Id. Trial counsel did not object to this line of argument. Petitioner argues that the prosecutor's mention of "some different version of events" was an improper reference to matters not in evidence, namely, the pre-trial statements by Archibald, Allen, and Smallwood to Detective Bendzlowicz.

Petitioner asserted this claim on direct appeal, and the Appellate Division rejected it as unpreserved. People v. Jones, 79 A.D.3d at 1774 (citing N.Y. CRIM. PROC. LAW § 470.05(2)). The Appellate Division's reliance upon C.P.L. § 470.05(2) was an independent basis for its decision, especially since the Appellate Division did not rule in the alternative on the merits of the

claim. The reliance on C.P.L. § 470.05(2) also was an adequate basis for the decision since it is settled law in New York state that in order to preserve a claim that a prosecutor committed misconduct before the grand jury or at trial, a defendant must register a timely, specific objection to each instance of impropriety with the trial court pursuant to C.P.L. § 470.05(2). E.g., People v. Williams, 8 N.Y.3d 854, 855 (2007). The Court agrees with Respondent that C.P.L. § 470.05(2) was an adequate and independent state ground for the Appellate Division's ruling on Petitioner's prosecutorial misconduct claim which bars further habeas review. See, e.g., Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (holding that C.P.L. § 470.05(2) was adequate and independent state ground barring prosecutorial misconduct claim, even where state court discussed merits of claim). Cause and prejudice to excuse the procedural default is not present here, and no showing of a fundamental miscarriage of justice has been made. The claim accordingly is dismissed as procedurally defaulted.

### 3. Ground Ten

Petitioner asserts that he was improperly questioned about his "post-arrest silence", and that the prosecutor erred in commenting on that testimony during summation. However, when describing the underlying facts, he instead refers to a conversation with police that occurred before he was arrested. During his direct examination, Petitioner testified that after learning that the

police had searched his house, he called the station to find out if there was a warrant for his arrest. He was told that there was not, and the officer with whom he spoke did not tell him that he had to come in and speak with the police. T.304-05. During his cross-examination, the prosecutor asked Petitioner whether, when he called the police station, the officer asked him to come in. Petitioner replied, "No, they asked would I like to come in and give my -- and give a side of the story from what happened, and I told them I would not, I would not like to come in." T.311. Sergeant Bisenbach testified during his cross-examination that Petitioner was under no obligation to come in and speak with the police. T.180. During his summation, the prosecutor referred to that testimony. T.358-89.

Respondent argues that his claim is unexhausted because it was not raised on direct appeal and must be deemed exhausted but procedurally defaulted because Petitioner would face procedural bars to exhaustion of the claim in state court. The Court agrees, and also finds that the claim is non-cognizable. "Impeachment of a defendant through the use of pre-arrest silence is improper under New York State law." Johnson v. Artuz, Nos. 00-CV-1332(JBW), 03-MISC-0066(JBW), 2003 WL 22964566, at *5 (E.D.N.Y. Sept. 3, 2003) (citing People v. DeGeorge, 73 N.Y.2d 614, 618 (1989)). However, the Supreme Court has held that the use of a defendant's pre-arrest silence for impeachment purposes does not offend any constitutional

guarantees. See Jenkins v. Anderson, 447 U.S. 231, 239, 240 (1980) (holding that Fifth Amendment, as applied to states, is not violated by use of prearrest silence to impeach a criminal defendant's credibility; and that use of prearrest silence to impeach credibility does not deny defendant the fundamental fairness guaranteed by the Fourteenth Amendment). In light of the foregoing precedent, Petitioner's improper impeachment claim does not state a federal constitutional claim cognizable on habeas review.

Also in the context of Ground Ten, Petitioner asserts that the prosecutor erroneously argued that his presence in the courtroom during trial allowed him to tailor his testimony because he had the opportunity to hear all of the other witnesses testify. The Court agrees with Respondent that this claim is procedurally defaulted as the result of the Appellate Division's reliance on the contemporaneous objection rule codified at C.P.L. § 470.05(2) to dismiss it. See Section IV.2, supra. Petitioner will not be prejudiced by this Court's refusal to review the claim since the Supreme Court specifically has held that a prosecutor's comments regarding a defendant's opportunity to hear other witnesses testify and to tailor his testimony does not violate the defendant's rights under the Fifth, Sixth and Fourteenth Amendments. Portuondo v. Agard, 120 S. Ct. 1119, 1120-21 (2000).

**IV. Conclusion**

For the reasons discussed above, the petition (Dkt. #1) is dismissed. As Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability will issue. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          February _6, 2015